Tilghman C. J.
Several reasons have been assigned for the reversal of this decree, but there are two which have been principally relied on. One, that the partition was manifestly unequal; the other, that the court had no authority to order a partition. In support of the first objection, there is strong evidence. The property assigned to Toung and wife, is of three times the value of that assigned to John Bickel. This is admitted by the Orphan’s Court. But as the two parts produce at this time nearly an equal rent, the value of the fee simple is supposed to be an immaterial circumstance, it being taken for granted, that the brother and sister of the intestate, who are entitled to the reversion in fee, can be no way affected by this partition. If they are affected, the injustice would be so great, that it is not pretended the partition can be supported. Supposing then, that our acts of assembly authorised the Orphan’s Court to order this partition, it must be governed altogether by those acts, and I can find no provision in any of them, by which the portion of land assigned to a widow, can be taken from her during her life. The English statute of 32 Hen. VIII, which gives a writ of partition between joint-tenants, and tenants in common, for years or for life, expressly provides, that it shall not affect the interest of reversioners or remainder men. But that statute has no effect on these proceedings. Now it being conceded, that Taung’s part is thrice as valuable as the re *470 maintng part, it follows, that if Mrs. Young survives John Bickel, the reversioners will be greatly injured,, because instead of coming into possession of one half of the estate of their brother Henry Bickel, according to their right, they will not have more than a fourth part. The partition therefore ought not to stand. Before I leave this subject, I will mention another circumstance not unworthy of notice. Four or five of the jury, although not blood relations, were connected with John Young, by various kinds of affinity. I know nothing of them, and therefore presume, that they were all honest men and of good character. But it is not right that connexions of this kind should be placed on juries ; and I hope, that in future it will be avoided. With respect to the power of the Orphan’s Court, I do not wish to say any thing very decided. The acts of assembly respecting intestates, contain expi’essions of large import, in favour of partition. And I suppose, there was a general intention of-authorising a partition, in all cases where real estate descended to several persons. Yet I foresee difficulties in the present case, where the whole estate goes in the first instance to tenants for life. It were therefore to be wished, that these parties could effect a partition amicably, between themselves, or that before another partition is made, under the authority of the court, the subject should be brought before the legislature, who might make some provision for the safe-, ty of the reversioner j for I am satisfied, that this exact case did not occur to those who drew the several intestate laws, or they would have made particular provision for it. My opinion, on the whole is, that the decree of the Orphan’s Court should be reversed.
Yeates J.
The plain words of the 22d section of the act of 19th April, 1794, authorise the widow or relict of an intestate, to apply to the Orphan’s Court, for partition of his lands, according to the purport and true meaning of that act; it, of course, includes the case of the intestate dying without, issue, which is provided for by that law. The 6th section of the act of 7th April, 1807, was not intended to deprive her of this right, but was designed to supply an omission in the 22d section of the former act. No reason of policy can be assigned, why, in the case of lineal descendants, the widow should be entitled to lands, and, in that of collateral heirs, she should *471 be confined to the interest of the valuation of one moiety of the lands of the husband.
It is justly complained of, that the partition here is grossly unequal. Such a case, plainly shown, would be relieved at law. Dyer, 73, pl. 7, in margin. So also in equity; Toth. 220, 221. 1 Fonbl. 15, &c. The testimony, which has come up with the record, proves this inequality, and it is admitted fully by the opinion expressed in the Orphan’s Court; but it is asserted therein, that the brothers and sisters cannot possibly be affected thereby; but to this I am compelled to withhold my assent. If the effects of this partition are confined solely to the father and mother, I should not feel disposed to interpose. But the words of the petition require a partition to be made to, and among the petitioners, and the representatives of the intestate. An order to that effect is made by the Orphan’s Court, which is pursued by the inquisition returned by the sheriff. Those representatives were, in fact, before the court: if the widow’s dower had been appraised too high, they would have been obliged to pay a yearly interest, beyond a fair valuation of one moiety of the lands and, where a partition has been made, as in the present instance, and the widow had survived the father, those representatives would not have succeeded to the possession of one equal half part of the lands, according to quantity and quality. This would have been manifestly unjust. To obviate this difficulty, it has been contended, that new proceedings might be had in the Orphan’s Court, on the death of the father; the brothers and sister not being bound thereby. But I perceive no clause in the act of 19th April, 1794, or any subsequent law, which would warrant such a procedure. The expressions in the 22d section are, that the partition made by the inquisition, shall be declared by the judgment of the Orphan’s Court, to remain firm and stable forever. The lands assigned to the widow by a court of competent jurisdiction, cannot be taken from her by any branch of the family, while that judgment remains in force.
Upon the ground of inequality of partition, I am of opinion, that the decree of the Orphan’s Court be reversed, and the record be remitted to them for further proceedings.
Brackenridge J. concurred.
Decree reversed.